# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| VALERIE HIRATA, WHITNIE TAYLOR and ANGELA JONES,<br><br>Plaintiffs,<br><br>v.<br><br>SOUTHERN NEVADA HEALTH DISTRICT, GLENN SAVAGE, in both his individual and official capacity, ROSE HENDERSON, in both her individual and official capacity, AMY IRANI, in both her individual and official capacity, SUSAN LABAY, in both her individual and official capacity, JACQUELYN RAICHE-CURL, in both her individual and official capacity, LORRAINE FORSTON, in both her individual and official capacity, ANGUS MACEACHERN, in both his individual and official capacity, ROBERT GUNNOE, in both his individual and official capacity, KIM DIPASQUALE, in both her individual and official capacity, ROBERT NEWTON, in both his individual and official capacity, CARA EVANGELISTA, in both her individual and official capacity, and LAWRENCE SANDS, in both his individual and official capacity,<br><br>Defendants. | Case No. 2:13-cv-2302-LDG-VCF<br><br>**<u>ORDER</u>** |

The plaintiffs, Valerie Hirata, Whitnie Taylor and Angela Jones, have brought suit against their former employer, the Southern Nevada Health District ("SNHD"), as well as twelve of their former co-workers and supervisors, claiming that each violated 42 U.S.C. § 1983, by using the plaintiffs' protected speech as a basis for harassment and retaliation. The plaintiffs further allege that such harassment constituted both a negligent and an intentional infliction of emotional distress, and that the harassment was so intolerable that each plaintiff's resignation amounted to a constructive discharge. Finally, the plaintiffs allege that the harassment by each defendant in their individual capacity was part of a civil conspiracy to violate the plaintiffs' rights. Eight of the defendants moved to dismiss the final claim (#20), a motion ultimately joined by the remaining five defendants (#30). The latter five defendants additionally moved to dismiss the first four claims contained in the complaint (#27). The plaintiffs oppose both motions (##33, 43), except as applied to their negligent infliction of emotional distress claim, to which the plaintiffs support dismissal (#45, 13:20). The Court will deny the first motion, and will grant the second motion in part and deny the second motion in part.[1]

Motion to Dismiss

The defendants' motions to dismiss, brought pursuant to Fed. R. Civ. P. 12(b)(6), challenge whether the plaintiffs' complaint states "a claim upon which relief can be granted." In ruling upon these motions, the Court is governed by the relaxed requirement of Rule 8(a)(2) that the complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief." As summarized by the Supreme Court,

---

[1] The court notes that on May 6, 2014, the magistrate judge granted a motion to extend discovery relating to qualified immunity to August 6, 2014, and ruled that motions based on that defense be filed by September 6, 2014. On July 11, 2014, the magistrate judge approved a stipulation to continue the qualified immunity discovery deadline to January 5, 2015, and rescheduled the settlement conference to be conducted on October 20, 2014. The present ruling may refine the continuing discovery and upcoming settlement conference to the extent that certain claims are dismissed, but principal allegations and defenses remain.

2

a plaintiff must allege sufficient factual matter, accepted as true, "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). Nevertheless, while a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (citations omitted). In deciding whether the factual allegations state a claim, the court accepts those allegations as true, as "Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations." *Neitzke v. Williams*, 490 U.S. 319, 327 (1989). Further, the court "construe[s] the pleadings in the light most favorable to the nonmoving party." *Outdoor Media Group, Inc. v. City of Beaumont,* 506 F3.d 895, 900 (9th Cir. 2007).

However, bare, conclusory allegations, including legal allegations couched as factual, are not entitled to be assumed to be true. *Twombly*, 550 U.S. at 555. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. Thus, this court considers the conclusory statements in a complaint pursuant to their factual context.

To be plausible on its face, a claim must be more than merely possible or conceivable. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'–'that the pleader is entitled to relief." *Id.* (citing Fed. R. Civ. Proc. 8(a)(2)). Rather, the factual allegations must push the claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Thus, allegations that are consistent with a claim, but that are more likely explained by lawful behavior, do not plausibly establish a claim. *Id.* at 567.

3

Factual Background

The plaintiffs, Valerie Hirata, Whitnie Taylor and Angela Jones, each worked with the Southern Nevada Health District (SNHD) for approximately 10 to 11 years, before each resigned between September and December of 2012 (#1, ¶¶ 5-7). The defendants include the SNHD, as well as its former employees and directors, including an environmental health director, environmental health supervisors, environmental health specialists, environmental health trainers, human resource administrators, human resource supervisors, human resource analysts and the chief health officer (#1, ¶¶ 8-19).

The plaintiffs allege that the Pool Plan Review Program, of which they were a part, instituted a variety of policy changes that would, in their opinion, lead to inadequate and unsafe pool inspections and approvals (#1, ¶ 33). In response, the plaintiffs, both individually and with other coworkers, filed a variety of complaints with their union representatives, as well as with a variety of supervisors and managers within SNHD.[2] The plaintiffs allege further that each of the defendants, individually and as part of a concerted effort to protect SNHD from accusations of malfeasance, retaliated against the plaintiffs through a variety of harassments and punishments (#1,¶¶ 29, 501). Although two plaintiffs initially sought resolution of their concerns through their unions, each plaintiff ultimately resigned from her position, citing variously the "toxic," "hostile, unhealthy and retaliatory," and "intolerable" work environment (#1, ¶¶ 419, 440 & 489).

Claim 1 - § 1983 Civil Rights Violation

The plaintiffs allege that the defendants violated 42 U.S.C. § 1983 by depriving them of their First Amendment rights to free speech. They allege that "the harassing, threatening and retaliatory conduct of the defendants was the result of the plaintiffs raising concerns within SNHD and to outside federal and state agencies and local officials

---

[2] See, e.g., #1, ¶¶ 44-46, 59, 61, 96, 103, 106, 126, 131, 134, 137, 158, 380, 417.

4

regarding the unethical, unsafe practices of SNHD." (#1, ¶ 24).  Therefore the Court must first determine whether the speech at issue was constitutionally protected.  If the speech is protected, the Court must then determine whether the defendants' alleged threats and retaliation amounted to a § 1983 violation.

The controlling Supreme Court decision is *Garcetti v. Ceballos*, which held "that when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline."  *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006).  The Ninth Circuit has provided a further test in order to determine when a public employee's speech receives First Amendment protection:  "First, the plaintiff bears the burden of showing that the speech addressed an issue of public concern . . . . Second, the plaintiff bears the burden of showing the speech was spoken in the capacity of a private citizen and not a public employee . . . . Third, the plaintiff bears the burden of showing the state took adverse employment action and that the speech was a substantial or motivating factor in the adverse action . . . . Fourth, if the plaintiff has passed the first three steps, the burden shifts to the government to show that . . . the state's legitimate administrative interests outweigh the employee's First Amendment rights . . . . Fifth and finally, if the government fails the [above] balancing test, it alternatively bears the burden of demonstrating that it would have reached the same adverse employment decision even in the absence of the employee's protected conduct." *Eng v. Cooley*, 552 F.3d 1062 (9th Cir. 2009) (quotations and citations omitted).

The defendants' motion to dismiss focuses on the second and third inquiry (#27, 19-21).  They argue that the plaintiffs have failed to plausibly allege that the contested speech was not made in their role as public employees, and that they have failed to plausibly allege that the contested speech was a substantial or motivating factor in the adverse employment action.

The defendants contend that although "[p]laintiffs raised the issue over and over, verbally, through memoranda and formal grievances . . . [a]ll of those issues were raised within the scope of Plaintiffs' professional duties in the Pool Plan Review unit" (#27, 19:14-17).  The central determination therefore becomes whether or not part of the plaintiffs' employment duties included making such grievances.  The Ninth Circuit has held that this issue is "a mixed question of fact and law."  *See Posey v. Lake Pend Oreille Sch. Dist. No. 84*, 546 F.3d 1121, 1129 (9th Cir. 1008).  The Court finds that for the purpose of meeting the *Iqbal* standard, the plaintiffs have plausibly alleged that such speech was made as private citizens, and is therefore protected.

In *Anthoine v. North Central Counties Consortium,* "a low-level employee . . . jumped the chain of command to report directly to the chairman of his employer's governing board that his immediate supervisor had misrepresented the status of the employer's compliance with its legal obligations." *Anthoine v. North Central Counties Consortium*, 605 F.3d 740, 744 (9th Cir. 2010).  The Ninth Circuit held that whether this amounted to public employee speech or private citizen speech was an issue of fact for a jury.  *Anthoine*, 605 F.3d at 750.  In *Marable v. Nitchman,* the Ninth Circuit held that "complaining about corrupt practices of higher-level officials was entirely outside the duties of a ferry engineer."  *Anthoine*, 605 F.3d at 750 (citing *Marable v. Nitchman,* 511 F.3d 924 (9th Cir. 2007)).

The Court finds that a similar issue of fact exists in the instant case.  The plaintiffs' complaint alleges that over the course of several years, one or more of the plaintiffs submitted a written group grievance to their union, which was forwarded to their human resources officials and one of their supervisors (#1, ¶¶ 44-46); attended a "Breakfast with the Boss" event with their chief health officer to express their concerns (#1, ¶ 59); later submitted the same grievance to their chief health officer (#1, ¶ 61); listed new concerns in letters to their supervisors (#1, ¶ 96); met to discuss department delays with a Clark County commissioner (#1, ¶ 103); submitted a letter to human resources asserting that they were

6

being targeted (#1, ¶ 106); met with a supervisor and environmental health manager, who condemned the plaintiffs' communications with individuals outside the office (#1, ¶ 126); met with the union to discuss a second grievance (#1, ¶ 131); submitted a second grievance (#1, ¶ 134); held grievance meetings with union representatives and several supervisors (#1, ¶ 137); held a further meeting with the environmental health manager and human resources (#1, ¶ 158); submitted a complaint to supervisors (#1, ¶ 380); and contacted "outside agencies" (#1, ¶ 417).

Some of these events may well have fallen within the duties of the plaintiffs' employment. Yet, given the breadth of allegations - that plaintiffs raised complaints to their environmental health manager, environmental health supervisors, chief health officer, human resources representatives and union representatives - the Court cannot say that plaintiffs' speech was not protected.

Having plausibly alleged that their speech may have been made as private citizens, the plaintiffs must additionally allege that adverse employment action was taken due to that speech. To sufficiently raise a civil rights claim against a municipality - in this case, defendant SNHD - plaintiffs must allege that a policy or custom of the governmental entity led to the constitutional violation. *Monell v. New York City Dep't of Social Services*, 436 U.S. 658, 690 (1978). To sufficiently raise a civil rights claim against individuals - in this case, all of the remaining defendants - the plaintiffs must allege that the individuals acted under the color of state law to deprive them of the constitutional right. 42 U.S.C. § 1983.

The Court holds that the plaintiffs' allegations were sufficient. The plaintiffs allege that they were criticized, harassed, investigated, paid less, demoted, transferred, placed on leave, given different or greater workloads, and were otherwise retaliated against on the

basis of their speech.[3]  The defendants argue that the cited events were not retaliatory, but were legitimate applications of the progressive discipline system agreed upon by SNHD in the plaintiffs' collective bargaining agreement.  As the case continues, the defendants will be free to present evidence of such.  At this early stage, however, accepting the plaintiffs' allegations as true, the plaintiffs have sufficiently demonstrated that they faced retaliation for their protected speech, and that such retaliation was undertaken both by individual defendants and, insofar as those defendants acted as policymakers, through customs established at the SNHD.

The Court will therefore deny the defendants' motion to dismiss as to the plaintiffs' first claim.

Claim 2 - Negligent Infliction of Emotional Distress

The plaintiffs have consented to the defendants' motion to dismiss as to this claim (#45, 13:20).

Claim 3 - Intentional Infliction of Emotional Distress

The elements of an intentional infliction of emotional distress ("IIED") claim are: "(1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiff's having suffered extreme emotional distress and (3) actual or proximate causation."  *Star v. Rabello*, 97 Nev. 124, 125, 625 P.2d 90, 92 (1981).

In their complaint, the plaintiffs summarize their intentional infliction of emotional distress allegations by stating:

> 511.  Defendants engaged in extreme and outrageous conduct with the intent of, or with reckless disregard for whether it would cause the Plaintiffs emotional distress.  Plaintiffs did in fact suffer extreme emotional

---

[3] See, e.g., #1, ¶¶ 34, 37, 51, 54, 62, 78, 90, 102, 111, 116, 122, 127, 128, 132, 136, 144, 146, 150, 162, 163, 166, 195, 197, 199, 285, 289, 290, 293, 301, 313, 331, 339, 341, 344, 346, 347, 350-51, 356, 363-64, 367, 380, 391, 403, 406, 416-418, 423, 427, 434, 440, 458, 467, 469, 470, 473, 474, 479 & 489.

>distress as an actual or proximate result of Defendants' conduct, including, but not limited to, giving the Plaintiffs extreme workloads with unreasonable working conditions; requiring Plaintiffs to approve pool inspections or plans that were unsafe, repaired and/or maintained incorrectly and a risk to public health; requiring that pool inspections be conducted on a daily basis oftentimes in the extreme heat as opposed to night or early morning hours; subjecting Plaintiffs to repeated discipline for no good reason; demoting, suspending and/or transferring Plaintiffs for reporting their concerns about management's conduct within the Pool Program to SNHD, outside agencies or local officials; and taking all measures possible to end their careers with the SNHD. As a direct result of Defendants' actions, Plaintiffs suffered great humiliation, severe and extreme emotional distress, pain and suffering, and will continue to suffer damages in an amount in excess of $10,000.

The defendants argue, and the Court agrees, that such allegations are insufficient, and will therefore grant the defendants' motion to dismiss as to this claim. Many of the plaintiffs' allegations are entirely conclusory in nature, and thus are to be disregarded. Those allegations that remain - for example, that the plaintiffs were required to approve unsafe pools, that they were required to work in the heat, and that they were disciplined - do not sufficiently state a claim for relief under the tort of intentional infliction of emotional distress. As presented, the facts do not sufficiently allege that the defendants acted intentionally or with reckless disregard, nor do they sufficiently allege that the plaintiffs actually suffered extreme emotional distress. In their response to the motion to dismiss, the plaintiffs suggest that their medical records will be opened during discovery and may thereby affirm their emotional distress (#45, 13:14-16). Yet plaintiffs have not made allegations relating to such evidence in their complaint. Therefore, the Court will grant the motion to dismiss as to this claim.

Claim 4 - Constructive Discharge

According to the Nevada Supreme Court, a "tortious constructive discharge is shown to exist upon proof that: (1) the employee's resignation was induced by actions and conditions that are violative of public policy; (2) a reasonable person in the employee's position at the time of resignation would have also resigned because of the aggravated and

9

intolerable employment actions and conditions; (3) the employer had actual or constructive knowledge of the intolerable actions and conditions and their impact on the employee; and (4) the situation could have been remedied." *Martin v. Sears, Roebuck and Co.*, 111 Nev. 923, 926 (1995).

The defendants' motion to dismiss argues that the plaintiffs' resignations were not reasonable, because the plaintiffs had not exhausted the grievance arbitration and appeals process available to them through their union (#27, 23-24).  While the Court agrees with the defendants that this failure may demonstrate that the plaintiffs' resignations were unreasonable, the Court cannot say it is conclusive.  Rather, the Court agrees with the plaintiffs insofar as they interpret their collective bargaining agreement to *permit* pursuing an appellate process, without *requiring* that all such avenues be exhausted before further steps are taken.  (#45, 14:19 - 17:8).  At this time, the Court believes this question of reasonableness is one best reserved for the jury, and therefore, the motion to dismiss as to this claim will be denied.

Claim 5 - Conspiracy

The plaintiff's final claim alleges that the defendants, acting as individuals, committed civil conspiracy in that they "intentionally and unlawfully" sought to violate the plaintiffs' First Amendment rights and induce their resignations (#1, ¶ 528).  "To state a cause of action for civil conspiracy, the complaint must allege: 1) the formation and operation of the conspiracy; 2) the wrongful act or acts done pursuant thereto; and 3) the damage resulting from such act or acts." *Ungaro v. Desert Palace, Inc.*, 732 F. Supp. 1522, 1532 n.3 (D. Nev. 1989).

"The alleged facts must show either expressly or by reasonable inference that Defendant had knowledge of the object and purpose of the conspiracy, that there was an agreement to injure the Plaintiff, that there was a meeting of the minds on the objective and

course of action, and that as a result one of the defendants committed an act resulting in the injury."

The defendants, in a separate motion to dismiss (#20), as well as the plaintiffs, in their response to the motion (#33), each spend significant time discussing the applicability of the intracorporate rule, and its possible exceptions, to the complaint. The defendants state that conspiracies cannot exist between employees and their employer, because they are one legal entity (#20, 4-5). The plaintiffs respond that employees conspiring in their personal capacity are not subject to the intracorporate barrier (#33, 7:11 - 8:13).

As the Court held in the plaintiffs' first claim, the complaint has sufficiently alleged that defendants acted in their individual capacity to deprive the plaintiffs of their First Amendment rights. In replying to the plaintiffs' response to the motion to dismiss, the defendants argue that the plaintiffs have failed to allege that "any individual acted out of purely personal interest," arguing the plaintiffs only alleged that the individuals "may have had a personal stake or bias" in the alleged conspiracy (#39, 4:25-27). The defendants cite authority from the Eighth Circuit, Eleventh Circuit, Seventh Circuit, Southern District of New York, and Northern District of Illinois[4] for the proposition that the plaintiff must allege that the conspiracy was "purely" or "solely" motivated by individual interest. However, even among the cases cited, it becomes apparent that courts are split on the application of the intracorporate rule or on the breadth of any exceptions to it. *See, e.g., Hartman v. Board of Trustees*, 4 F.3d 465, 470 (7th Cir. 1993). One such case argues that an exception exists when individuals have an "independent personal stake," in the conspiracy, which is precisely what the defendants in this case acknowledge the plaintiffs have alleged. *Greenville Pub. Co., Inc. v. Daily Reflector, Inc.,* 496 F.2d 391 (4th Cir. 1974). Lacking

---

[4] *Cross v. General Motors Corp.*, 721 F.2d 1152 (8th Cir. 1983); *Hartman v. Board of Trustees*, 4 F.3d 465 (7th Cir. 1993); *Denny v. City of Albany*, 247 F.3d 1172 (11th Cir. 2001); *Johnson v. Nyack*, 954 F. Supp. 717 (S.D.N.Y. 1997); *McCraven v. City of Chicago,* 18 F. Supp.2d 877 (N. D. Ill. 1998).

clearer direction from the Ninth Circuit or other courts within the Ninth Circuit, this Court will err on the side of permitting discovery to better understand these allegations, and will therefore deny the defendants' motion to dismiss this claim at this time.

Accordingly,

THE COURT **ORDERS** that Defendants' Motion to Dismiss (#20) is DENIED.

THE COURT **FURTHER ORDERS** that Defendants' Motion to Dismiss (#27) is GRANTED as to Plaintiffs' negligent infliction of emotional distress and intentional infliction of emotional distress claims, and is DENIED as to Plaintiffs' § 1983 claim and constructive discharge claim.

DATED this 26 day of September, 2014.

_____
Lloyd D. George
United States District Judge